NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HYUNDAI ELECTRIC & ENERGY SYSTEMS, FKA HYUNDAI HEAVY INDUSTRIES CO., LTD.,**
*Plaintiff-Appellee*

**ILJIN ELECTRIC CO., LTD., HYOSUNG HEAVY INDUSTRIES CORPORATION, FKA HYOSUNG CORPORATION,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant*

**HITACHI ENERGY USA INC., FKA ABB ENTERPRISE SOFTWARE INC.,**
*Defendant-Appellant*

---

2021-2312

---

Appeal from the United States Court of International Trade in No. 1:18-cv-00066-MAB, Judge Mark A. Barnett.

---

Decided:  August 11, 2022

---

RON KENDLER, White & Case LLP, Washington, DC, argued for plaintiff-appellee. Also represented by DAVID EDWARD BOND.

ROBERT ALAN LUBERDA, Kelley Drye & Warren, LLP, Washington, DC, argued for defendant-appellant. Also represented by MELISSA M. BREWER, DAVID C. SMITH, JR.

_____

Before NEWMAN, STOLL, and STARK, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

This appeal is from the decision on the fourth administrative review of certain large power transformers manufactured in the Republic of Korea by Hyundai Electric & Energy Systems and other entities ("Hyundai"), respondents in this administrative review. Hitachi Energy USA, Inc. appeals the final decision of the Court of International Trade, setting a zero dumping margin.[1]

Sale in the United States of imported products at less than fair value is called "dumping." The Department of Commerce is authorized to impose duties measured as the difference between the sales price in the foreign market and in the United States. Dumping investigations may be commenced on petition by "an interested party." 19 U.S.C. § 1671a (citing definition at 19 U.S.C. § 1677(9)). Parties to the administrative review may appeal to the Court of International Trade and then the Federal Circuit.

BACKGROUND

The power transformers that are the subject of this review were imported from August 2015 through July 2016. Administrative reviews generally start with a

_____

[1]    *Hyundai Heavy Indus. Co. v. United States*, 527 F. Supp. 3d 1374 (Ct. Int'l Trade 2021) ("*CIT Decision 3*").

questionnaire from Commerce. Hyundai responded to Commerce's questions, and reported price changes involving certain components of the transformers sold in Korea. Hyundai provided records stating which components of its home market transformers should be considered foreign like products, and which should not.[2]

In one reported sale, Hyundai identified two components as non-subject merchandise, but Commerce later determined that those components are foreign like products. Commerce found that if complete sales figures were used for these components, as would be required if the components had been deemed foreign like products, the dumping margin would increase.

Commerce found Hyundai's reports reflected a misrepresentation of Commerce's investigation. Commerce consequently determined that Hyundai's reported pricing in Korea was "unreliable," and Commerce applied total adverse facts available and imposed a dumping margin of 60.81%, making an adverse inference, as the statute authorizes. *Hyundai Heavy Indus. Co. v. United States*, No 1:18-cv-00066-MAB, (May 14, 2018), ECF 19-6 at 16–18, 22 ("*Commerce Issues & Decision Memorandum*").

Hyundai appealed, and the Court of International Trade vacated Commerce's decision on the ground that Hyundai had properly reported data related to "accessories" not at issue on this appeal. *Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293, 1316–17 (Ct. Int'l Trade 2019) ("*CIT Decision 1*"). The court remanded to

---

[2]    Identical goods sold in a respondent's home market are "foreign like product." 19 U.S.C. § 1677(16). Goods falling outside the scope are "non-subject merchandise." *Id.* at § 1677(25).

Commerce for more complete explanation. On remand, Commerce largely affirmed its prior decision, stating that

> Hyundai's understatement of home market prices by inconsistently treating a certain part as subject merchandise for certain sales and nonsubject for other home market sales, undermines Commerce's ability to calculate an accurate margin for Hyundai, justifying, as described above, the use of total adverse facts available for Hyundai's margin calculation.

Department of Commerce Remand Results, *Hyundai Heavy Indus. Co. v. United States*, No. 1:18-cv-00066, (Dec. 19, 2019), ECF 92-1 at 21–22 ("*First Remand Dec.*").

In the First Remand Decision, Commerce declined to consider certain information submitted by Hyundai, stating that "Hyundai's reporting of its home market gross unit prices, inclusive of the price of within-scope parts, has been an issue in other administrative segments under this order." *First Remand Dec.* at 17–18. Commerce stated that it does "not have the documentation to determine the accuracy of the sales prices for all the other home market sales" provided by Hyundai. *Id.* On this ground, Commerce rejected Hyundai's pricing information, holding that using Hyundai's potentially unreliable information would cause undue difficulties. *Id.* at 19 (citing 19 U.S.C. § 1677m(e)(5)). Commerce also referred to Hyundai's misreporting of certain price information in the Third Administrative Review, which covered the year before the sales at issue on this appeal. *See Hyundai Heavy Indus., Co. v. United States*, 332 F. Supp. 3d 1331 (Ct. Int'l Trade 2018).

In the First Remand, Commerce applied an adverse inference against Hyundai, also because Commerce determined that Hyundai had not complied with Commerce's requests to the best of its ability. Commerce explained:

> Hyundai had the opportunity to provide complete

> and accurate information with respect to its report-
> ing of home market gross unit prices, and indeed,
> as the sample sales documentation demonstrates,
> possessed the information, but failed to provide
> such information to Commerce.  Therefore, Com-
> merce finds that Hyundai did not act to the best of
> its ability and impeded Commerce's conduct of the
> review; accordingly, the use of adverse inference is
> warranted in selecting from the available facts.

*First Remand Dec.* at 18–19.

Hyundai again appealed.  The Court of International Trade rejected Commerce's determination, stating that, Hyundai "provided the information to Commerce but disagreed with the agency as to whether it related to foreign like product." *Hyundai Heavy Indus. Co. v. United States*, 485 F. Supp. 3d 1380, 1400 (Ct. Int'l Trade 2020) ("*CIT Decision 2*").  In particular, the court stated that "Only after issuing the Preliminary Results did Commerce question whether the parts at issue were foreign like product." *Id.* at 1401.  The court also stated that Commerce "could not definitively 'determine whether Hyundai understated [its] home market gross unit prices.'" *Id.* (citing *Commerce Issues & Decision Memorandum* at 17, alteration original). The court further found an absence of substantial evidence to support Commerce's application of total adverse facts available.  *CIT Decision 2*, 485 F. Supp. 3d at 1389.  The court determined that the record supported only the application of partial, neutral facts available to fill certain gaps caused by Hyundai's misunderstanding of the scope of Commerce's review.  The court stated:

> Commerce infers that [Hyundai]'s entire home
> market sales database was unreliable based solely
> on [Hyundai]'s failure to report properly its inclu-
> sion of Parts A or B in just two of its home market
> sales.  Indeed, Commerce had documentation for
> several other home market sales which did not

> include Parts A or B.  Not only are the two sales at issue a limited portion of the document-supported home market sales, it is not clear how these two sales undermined the reliability of other documented sales which did not include Parts A or B.

*CIT Decision 2*, 485 F. Supp. 3d at 1399 (citations omitted). Accordingly, the court determined that "Commerce's finding that it had 'no basis in the record for determining what [the] home market gross unit prices should be for the overwhelming majority of sales' is simply unsupported speculation and not based on substantial evidence." *Id.* (quoting *First Remand Dec.* at 30–31, alteration original).

On the Second Remand, Commerce applied partial neutral facts available and arrived at a dumping margin of zero. *Hyundai Heavy Indus. Co. v. United States*, No. 1:18-cv-00066, (Apr. 6, 2021) ECF 154 ("*Second Remand Dec.*"). Hitachi appealed, but the Court of International Trade affirmed Commerce's zero margin decision.  This appeal followed.

## DISCUSSION

Hitachi seeks vacatur of *CIT Decision 2* and *CIT Decision 3*, and reinstatement of the dumping margin of 60.81% imposed by the *First Remand Decision.*

"The Court of International Trade reviews Commerce's determinations in an antidumping duty review to ascertain if that decision is supported by substantial evidence on the entirety of the record, and is in accordance with law." *Sharp Corp. v. United States*, 63 F.3d 1092, 1095 (Fed. Cir. 1995).  The Federal Circuit applies the same standard of review to Commerce's determination.  *Id.*

Hyundai argues that any past issues of compliance in the Third Administrative Review should not be the basis for applying an adverse inference in a subsequent review. Hyundai states that it is improper to rely on assertedly

deficient past behavior to condemn a later administrative review. Hyundai Br. 30–31. *See, Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("[E]ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.").

Hitachi argues that the Court of International Trade substituted its own view for that of Commerce, in characterizing Commerce's analysis as speculative. Hitachi states that Commerce had the authority to penalize Hyundai in this Fourth Administrative Review for Hyundai's lack of cooperation in the Third Administrative Review. Hitachi stresses that Hyundai bore the burden of establishing the administrative record in this Fourth Review.

Hyundai is correct that the information provided for each review must be evaluated independently. In the Third Review Hyundai did "not directly challenge Commerce's factual finding that [Hyundai] withheld information, such as the proper reporting of the part in question." *Third Review*, 332 F. Supp. 3d at 1345. Here, in contrast, Hyundai denies withholding any information, and Commerce did not charge Hyundai with withholding any information at any stage of this review. Instead, "Commerce requested and [Hyundai] provided documentation for certain home market sales, including a complete breakdown between foreign like product and non-foreign like product along with detailed narrative explanation and supporting documentation for the relevant categorization." *CIT Decision 2*, 485 F. Supp. 3d at 1401 (internal quotation marks omitted). Commerce's reference to "an issue" with Hyundai's reporting in the Third Administrative Review does not suggest present misfeasance in the context of Hyundai's responses here. *First Remand Dec.* at 18. The Court of International Trade correctly so held.

The decision in *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1297 (Fed. Cir. 2021), on which Hitachi relies, is not to the contrary. There the respondent provided "at best, inconsistent representations, and fail[ed] to timely explain and meaningfully support those representations," and Commerce found that the behavior was particularly egregious in a party "knowledgeable of the process" of administrative reviews. *Id.* at 1292. This court conducted a thorough review of the respondent's actions before affirming. *See id.* at 1297. Here, in contrast, the record supports the Court of International Trade's determination that Hyundai's misunderstanding of the scope of Commerce's request was limited, and reflected the best of Hyundai's ability. Hyundai's past behavior did not warrant application of an adverse inference and did not create undue difficulty in using Hyundai's data.

Substantial evidence does not support Commerce's initial decision to disregard all of Hyundai's price information as unreliable. As the Court of International Trade discussed, there were two components of the transformers that Hyundai stated were not subject merchandise, and these components affected the price of only one home market sale. *CIT Decision 2*, 485 F. Supp. 3d at 1399. Hitachi argues that Hyundai's misclassification of certain components as non-subject merchandise was "methodological" and called into question the rest of Hyundai's data. However, substantial evidence supported Commerce's *Second Remand* finding: that using Hyundai's data did not cause undue difficulties.

The Court of International Trade applied the rule that "Commerce can only use facts otherwise available to fill a gap in the record." *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011). Here, the gap was small, and the record shows that Hyundai's mistake affected only one sale. In *Zhejiang*, we reversed the decision allowing Commerce to use total adverse facts

available where a respondent's reporting created only a small gap in the record. *Id.* Accordingly, the Court of International Trade correctly determined that Commerce's initial application of total adverse facts available was speculative in light of the record, which demonstrated that most of Hyundai's price information was reliable. *CIT Decision 2*, 485 F. Supp. 3d at 1399.

Hitachi disputes this reasoning and argues that the higher tariff should be reinstated. Commerce's final decision held that an adverse inference was not warranted, and that absent an adverse inference, a dumping margin was not established. As the Court of International Trade concluded, there was not substantial evidence on which to base an adverse inference. *CIT Decision 2*, 485 F. Supp. 3d. at 1401. The First Remand, in which Commerce had applied adverse inferences, did not identify any evidence that Hyundai did not cooperate to the best of its ability. In *Nippon Steel Corp. v. United States*, 337 F.3d 1373, (Fed. Cir. 2003), this court recognized that compliance to the best of a respondent's ability "does not require perfection and recognizes that mistakes sometimes occur." *Id.* at 1382.

The Court of International Trade found that Hyundai complied with Commerce's requests to the best of its ability, and that any mistakes were inadvertent and were corrected without undue difficulty. *CIT Decision 2*, 485 F. Supp. 3d at 1400–01. Substantial evidence supported this finding and Commerce's Second Remand determination of zero dumping margin.

## CONCLUSION

We affirm the decision of the Court of International Trade, affirming Commerce's Second Remand decision, which determined that a dumping margin was not established.

## AFFIRMED